## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| XIANGYUAN ZHU, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. 04-2539-KHV |
| v. | ) | |
| | ) | |
| FEDERAL HOUSING FINANCE BOARD, | ) | |
| et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## ORDER

On February 22, 2007, the Court ordered that plaintiff no later than March 2, 2007 file a second amended complaint in compliance with an order which Magistrate Judge James P. O'Hara entered on August 10, 2006.[1]  Doc. #410 at 7.  The Court warned plaintiff that if she did not comply with the order, "her case will be dismissed with prejudice without further notice."  Id.

The record contains a second amended complaint which is file-stamped Friday, March 2, 2007.  See Doc. #433.  The complaint was not docketed on the court's electronic case management system, however, until March 7, 2007.  Motions by defense counsel and conversations with court personnel suggested a procedural irregularity in the filing of plaintiff's complaint.  Therefore, on March 23, 2007, the Court conducted an evidentiary hearing to address the circumstances of the filing of the second amended complaint.  The Court heard testimony from plaintiff and from three Deputy Clerks of the Court, Shirley Lamott, Carol Kuhl and Jason Bruhn.  To the extent that their

---

[1]      The Court has set out a detailed description of the case proceedings in the Memorandum And Order (Doc. #186) filed September 22, 2005, and the Order (Doc. #410) filed February 22, 2007.

testimony contradicts that of plaintiff, the Court credits the testimony of Lamott, Kuhl and Bruhn. Based on the record evidence, the Court makes the following findings of fact:

The Clerk of Court provides drop boxes outside the courthouses in Kansas City, Topeka and Wichita, Kansas. The drop boxes are metal lockers which include mechanical file stamps. In Topeka, the drop box is three or four feet deep and the inside door is locked with a padlock. The drop boxes are provided as a convenience to the public, so they may file pleadings outside business hours and receive a file stamp which verifies the date and time of filing. In Topeka, the Clerk's Office checks the drop box and retrieves any filings at around 8:00 a.m. each business morning.[2] Any documents in cases assigned to Topeka judges are docketed on CM/ECF on the same day they are retrieved, by Topeka docket clerks. Later that day, documents for cases assigned to Kansas City judges are sent to Kansas City by courier. The courier delivers the documents to the Kansas City courthouse on the morning of the following business day. The Clerk's Office in Kansas City dockets those pleadings on CM/ECF on the day they arrive in Kansas City.

Plaintiff, who resides in Topeka, testified that at 8:51 p.m. on March 2, 2007, she file-stamped the front page of her second amended complaint at the drop box outside the courthouse in Topeka. Plaintiff testified that she then placed the entire pleading in a manila envelope and deposited the envelope in the drop box. Plaintiff also testified that on the evening of March 2, 2007, she mailed her second amended complaint to defense counsel, at the main post office in Topeka. The envelope which plaintiff mailed to defense counsel is not postmarked, however, until March 5, 2007.

---

[2]     With the advent of case management/electronic case filing ("CM/ECF"), very few pleadings are filed in paper form, and far fewer pleadings arrive through the drop box. Paper pleadings originate almost exclusively with *pro se* filers, who do not receive electronic filing privileges.

Deputy Clerk Shirley Lamott testified that her duties include daily collection of documents deposited in the drop box in Topeka. Each weekday morning, Lamott unlocks the drop box at about 8:00 a.m. and removes the contents, which are in plain sight when the box is opened. On Monday morning, March 5, 2007, pursuant to her routine procedure, Lamott unlocked the drop box at Topeka and removed the contents. The drop box contained only a locked blue courier bag from the Kansas City Clerk's Office. Plaintiff's second amended complaint was not in the drop box. Lamott is certain that the complaint was not in the drop box when she emptied it on the morning of March 5, 2007. Later that day, Lamott received a phone call from the office of defense counsel, asking whether plaintiff had filed her second amended complaint. Because the case is assigned to a Kansas City judge, Lamott checked the courier bag which was headed to Kansas City that afternoon. The second amended complaint was not in the bag destined for Kansas City.

On Tuesday morning, March 6, 2007, when Lamott opened the Topeka drop box, she found an envelope addressed to the Kansas City Clerk's Office. The envelope contained plaintiff's second amended complaint. The first page of the complaint had a drop box file stamp of 8:51 p.m., March 2, 2007. Because of the obvious discrepancy, Lamott went down to check the file stamp to be sure that it was functioning properly. It was, and pursuant to standard procedure, Lamott forwarded plaintiff's complaint via courier to Kansas City.

Jason Bruhn, Deputy Clerk in the Kansas City Clerk's Office, testified that on Wednesday, March 7, 2007, he received the courier bag from the Topeka courthouse. Bruhn distributed the contents to Clerk's Office staff for docketing.

Carol Kuhl, Deputy Clerk in the Kansas City Clerk's Office, dockets *pro se* filings for the undersigned judge. Kuhl's normal procedure is to docket filings on the day they arrive in Kansas City.

3

On the morning of March 7, 2007, plaintiff called Kuhl and asked whether she had received the complaint. Kuhl told plaintiff that she had not received it, but that she expected the Topeka courier bag to be delivered shortly, and she offered to call plaintiff when she received the pleading. Plaintiff indicated that she would just see it on CM/ECF. Later that morning, Kuhl received the complaint. Based on the date stamp on the front page, pursuant to standard procedure, Kuhl docketed the complaint on March 7, 2007 as having been filed March 2, 2007. See Doc. #433.

The Court takes judicial notice that on many prior occasions in this case, plaintiff has filed pleadings which appear to have been back-dated through use of the file-stamp and drop box at the Topeka courthouse. Plaintiff has apparently adopted a practice of timely file-stamping the first page of a given pleading, then returning at a later date to deliver the pleading to the Clerk's Office by depositing it after hours in the drop box.[3] See, e.g., Motion For Reconsideration (Doc. #354) filed Tuesday, December 5, 2006, entered Monday, December 11, 2006; Motion To Quash (Doc. # 382) and Brief In Support (Doc. #383), filed Wednesday, January 24, 2007, entered Monday, January 29, 2007; Objection, filed Thursday, February 1, 2007, entered Tuesday, February 6, 2007. When the Court asked plaintiff to explain the discrepancies, plaintiff simply responded that defendant had never challenged them before. Plaintiff suggested that the Clerk's Office processed lots of documents, but the Clerk's Office dockets pleadings on the day when they are received and at most only a few documents are deposited in the Topeka drop box each day.

Plaintiff's testimony, that she placed the second amended complaint in the Topeka drop box on March 2, 2007 in an envelope addressed to the Kansas City, Kansas Clerk's Office, is not

---

[3]     Because of the many discrepancies between the file-stamped dates and the receipt dates on various pleadings, the Court has suspected plaintiff of using this ploy to avoid compliance with judicial deadlines. For this reason, and building security concerns, the Court is in the process of eliminating all drop boxes.

credible.  The Court finds that on Friday, March 2, 2007, plaintiff used the drop box at the Topeka

Courthouse to file-stamp the first page of her second amended complaint.  Plaintiff did not place

the 49-page pleading in the drop box until sometime after 8:00 a.m. on March 5 or in the early

morning of March 6, 2007.

Plaintiff cannot explain why, if she filed the second amended complaint on March 2, it was

not in the drop box on Monday morning, March 5, 2007.  At a hearing on February 27, 2007, Judge

O'Hara emphasized to plaintiff that if she did not meet the March 2 deadline, Judge Vratil could –

and likely would – dismiss her complaint with prejudice.  Plaintiff argues that these warnings

confirm that she filed the second amended complaint on March 2, 2007.  In fact, however, these

warnings suggest that plaintiff would go to great lengths to get a file-stamped date of March 2,

2007.

## Analysis

Although the file stamp date is presumed to be the date a document is filed, filing is actually

accomplished when the complete document is placed into the custody and control of the Clerk of

the Court.  See United States v. Johnson, 992 F. Supp. 1257, 1263-64 (D. Kan. 1998) (documents

filed upon delivery to clerk's custody).  Plaintiff did not deliver the second amended complaint on

or before March 2, 2007, and the file stamp date of March 2, 2007 is fraudulent.  The second

amended complaint is therefore stricken as untimely.

On February 22, 2007, the Court stated that if plaintiff did not file a second amended

complaint by March 2, 2007, "her case [would] be dismissed with prejudice without further notice."

Doc. #410 at 7.  The Court also warned plaintiff that **"[f]ailure to comply with [the magistrate's

rulings], with the Federal Rules of Civil Procedure, and the local rules of this Court may

result in sanctions up to and including dismissal with prejudice."**  Id.

Under Rule 41(b), a district court has discretion to dismiss an action with prejudice for failure of the plaintiff to "comply with these rules or any order of court." Fed. R. Civ. P. 41(b); see Santistevan v. Colo. Sch. of Mines, 150 Fed. Appx. 927, 929 (10th Cir. 2005). A district court may dismiss an action under Rule 41(b) only after considering whether certain factors support a dismissal. These factors, set forth in Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992), include "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994) (applying Ehrenhaus factors to dismissal under Rule 41(b)).

All five factors weigh completely in favor of dismissal with prejudice. First, to get more time to file her second amended complaint, plaintiff basically attempted to defraud the Court and prejudice defendant by further delay of proceedings. FHLB has now incurred further expense in responding to plaintiff's second amended complaint and litigating the question of sanctions. As to the second factor, plaintiff's filing of a fraudulent file-stamped document is an extremely serious interference with the judicial process. Moreover, this is not an isolated instance. Plaintiff has previously used this ploy to avoid complying with court deadlines. Even more outrageous is plaintiff's false testimony under oath that she placed the document in the drop box on March 2, 2007. See In re Michael, 326 U.S. 224, 227-28 (1945) ("All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth."). In sum, plaintiff's conduct is an affront and blatant interference with the judicial process – worse than this judge has seen in 15 years on the bench. As for the third factor, plaintiff proceeds *pro se*. She alone is responsible

for her conduct.  Applying the fourth factor, the Court has admonished plaintiff on several occasions in this case (and other cases) that she must follow the rules and procedures of this Court.  See, e.g., Order (Doc. #257) filed August 10, 2006 at 9 (defendant made "very strong arguments" in favor of sanctions; warning plaintiff that continuing to ignore Court orders could lead to severe sanctions including dismissal); Order (Doc. #309) filed October 11, 2006, at 2 (cautioning plaintiff that attempts to obtain records from defendant or nonparties which are irrelevant or only sought to annoy, embarrass, oppress, cause undue burden or expense will result in sanctions).  More importantly, as noted above, the Court ordered plaintiff to file a second amended complaint on or before March 2, 2007, and stated that if she failed to do so, "her case will be dismissed with prejudice without further notice."  Doc. #410 at 7.  The Court also warned plaintiff that **"[f]ailure to comply with [the magistrate's rulings], with the Federal Rules of Civil Procedure, and the local rules of this Court may result in sanctions up to and including dismissal with prejudice."** Id.  The fourth factor weighs in favor of dismissal.

As to the fifth factor, plaintiff has ignored the Court's stern warnings in this case.  The Court finds that sanctions short of dismissal with prejudice would not deter plaintiff's outrageous and fraudulent conduct, including giving false testimony under oath.

The Court is loathe to call plaintiff a liar, especially in light of her superficial attitude of respect, compliance and confusion and her professed limitations in the English language.[4]  These factors, combined with  plaintiff's *pro se* status, have caused the Court to repeatedly refrain from

---

[4]        The volume and quality of plaintiff's pleadings in this case belie any suggestion that plaintiff is uneducated or lacks fluency in English.  Plaintiff has a Ph.D. in economics and apparently a juris doctorate from an on-line law school.  Her work demonstrates a mastery of the rules of civil procedure which surpasses that of many lawyers.  The hearing, however, produced no credible evidence that plaintiff filed her complaint on March 2, 2007.  The Court has no alternative but to reject her argument.

imposing sanctions where sanctions were perhaps justified.  It cannot tolerate conduct which is clearly so calculated, however, to work a fraud upon the Court and parties to litigation in the District of Kansas.

   **IT IS THEREFORE ORDERED** that plaintiff's <u>Second Amended Complaint</u> (Doc. #433) be and hereby is **STRICKEN**.

   **IT IS FURTHER ORDERED that plaintiff's case is DISMISSED WITH PREJUDICE**.

   Dated this 1st day of May, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u><br>
Kathryn H. Vratil<br>
United States District Judge

8